**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:17-cv-00025-WYD-KHR**

**VALERIE JEFFERS,
Plaintiff,**

**v.**

**OCWEN LOAN SERVICING, LLC,
Defendant.**

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE [DOC. #43]**

---

**A.  Prejudicial or Inflammatory References or Evidence Regarding The Banking Industry, The Residential Mortgage Lending Industry, And The Mortgage Servicing Industry In General**

This is the type of issue that would be more suitable for Ocwen to simply object to at trial.  Indeed, the phrases "prejudicial" and "inflammatory" are often in the eye of the beholder, and there may be differences of opinion as to whether evidence falls into these categories.  Defendant is a mortgage servicer and a bank, and there is no basis to rule that any references to mortgage servicers or banks in general is automatically improper. Further, this is such a broad application that it is not totally clear exactly what Ocwen seeks to exclude.

**B.  Evidence Of Other Lawsuits Or Regulatory Actions Against Ocwen And/Or Its Affiliated Entities**

This issue was already addressed in great detail in Plaintiff's Motion in Limine (Doc. # 37, p. 1-3) and Plaintiff's Reply in Support of Motion in Limine (Doc. #39, p. 7-8).

Plaintiff will stand on her briefs already submitted on this issue, rather than re-hashing this argument again.

## C. References To The Size, Financial Condition, Financial Affairs, And Out-Of-State Residency Of Ocwen

With respect to size, financial condition, and financial affairs, the 10th Circuit has already rejected Ocwen's argument on this issue:

> wealth must remain relevant, because $50,000 may be awesome punishment for an impecunious individual defendant but wholly insufficient to influence the behavior of a prosperous corporation.

*Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 641 (10th Cir. 1996).

With respect to Ocwen's status as a Florida corporation, this can hardly be said to be prejudicial.  This is just a basic background fact, which Ocwen already stipulated to in the final pretrial order.  *Doc. # 21, ¶ 4, #2.*  Ocwen should be estopped from objecting to a fact it already stipulated to in the final pretrial order.  Furthermore, it is inconceivable that the jury would disregard their oaths and the evidence in the case and rule against Ocwen solely on the basis that Ocwen is from Florida.

In support of its argument, Ocwen cites the Court to a bankruptcy case from New Mexico, which allegedly stands for the proposition that financial condition is irrelevant. *See Doc. # 43, p.5, citing In re Escobedo, 513 B.R. 605, 613 (Bankr.D.N.M. 2014).*  But *Escobedo* was a case where a court awarded $7,000 in punitive damages against a creditor for violating the bankruptcy automatic stay, and the Court considered the fact that the creditor had property worth $90,000, and had the ability to pay.  *Id.* Thus, *Escobedo* actually supports Plaintiff's argument, because the court considered the Defendant's financials when assessing punitive damages.

Finally, Ocwen relies heavily on the *Cowden* case from Missouri, which was a case under the Federal Employers' Liability Act (FELA), which **does not** authorize punitive damages.   *Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1113 (E.D. Mo. 2013) (punitive damages are not cognizable under the FELA).   In sharp contrast, the FCRA **does** authorize an award of punitive damages.   *See e.g. 11 U.S.C. § 1681n*. Thus, *Cowden* is not really all that instructive as the case involves a different statute with different remedies.

**D.  Evidence Of Any Damages To Jeffers' Credit**

Plaintiff disagrees with Ocwen's assertions that its false credit reporting did not cause any "concrete" damages, and results in mere "speculation."  Even absent credit denials, the law is clear that Plaintiff can still recover emotional distress, embarrassment, and humiliation.  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013); *Sloane v. Equifax Info. Servs.*, LLC, 510 F.3d 495, 500 (4th Cir. 2007).  Assuming, for the sake of argument, that Ocwen is correct in that Plaintiff's damage to credit claims are "speculation", a simple objection at trial would suffice.  The Court should defer its ruling on this issue until it hears the foundation for the evidence.

A claim for credit harm/loss credit opportunities can form the basis for an award of damages under the FCRA.  *Price v. Trans Union*, LLC, 737 F. Supp. 2d 281, 288 (E.D. Pa. 2010), *citing Lawrence v. Trans Union LLC*, 296 F.Supp.2d 582, 588 (E.D.Pa.2003).  It is undisputed that Ocwen reported inaccurate information about Plaintiff, i.e. that Plaintiff was "90 days past due" on her loan, when in reality, she was current on the loan.  The Third Circuit has held that it is a jury issue whether a credit reporting inaccuracy was a "substantial factor" in a lost credit opportunity, and that a

consumer-plaintiff is minimally required to present some evidence of a credit inaccuracy and then some evidence of applying for and not obtaining credit. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 966–70 (3d Cir.1996), *abrogated on other grounds*; *Cortez v. Trans Union*, LLC, 617 F.3d 688, (3d Cir.2010).   In this case, Plaintiff can easily satisfy the tests set forth in *Philbin* and *Cortez* with her own testimony.   Moreover, the various lenders can testify as to the reasons that they denied a loan to Plaintiff.

Furthermore, Plaintiff can show that her credit score with the Ocwen inaccuracies on it was 616, and the day after it was corrected, Plaintiff's credit score rose to 669, and is still rising to this day.   *Tilley v. Glob. Payments, Inc.*, 603 F. Supp. 2d 1314, 1326 (D. Kan. 2009) (jury could find immediate increase in credit scores upon removal of inaccurate information a substantial factor in plaintiff's credit denial).   In a similar case, the 4th Circuit rejected the defendant's "speculation" argument and refused to set aside a jury's verdict for actual damages resulting from credit denials.   S*loane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 501 (4th Cir. 2007) (The evidence at trial in this case clearly demonstrates that on numerous occasions Suzanne attempted to secure lines of credit from a variety of financial institutions, only to be either denied outright or offered credit on less advantageous terms that she might have received absent Equifax's improper conduct).

1. Plaintiff's Credit Reports are not Hearsay

Next, Ocwen argues that the credit reports contained in various lender's subpoena responses are inadmissible hearsay, notwithstanding that each lender has executed a business records declaration, and each lender is listed on Plaintiff's witness list.   The credit report(s) are **not hearsay** because the credit report is offered for its

falsity, not for the truth of the matter asserted.  In other words, the credit report is offered to prove the falsity of Ocwen's credit reporting, not the truth of Ocwen's credit reporting.  The U.S. Supreme Court has ruled that evidence offered for its falsity, not its truth, is not hearsay.  *Anderson v. U.S.*, 417 U.S. 211, 219-220 (1974).  The 9th Circuit has held that credit reports offered to prove their falsity and that the statements were made, are not hearsay:

> Gorman does not rely on the credit reports for the truth of the matter asserted therein; in fact, as he notes, **he disputes the truth of their contents.** Instead, Gorman offers them to prove that no statement noticing the dispute was made. 'If the significance of an offered statement lies solely in the fact that it was made ... the statement is not hearsay.'

*Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (bolded for emphasis), *citing Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir.2009) (citations omitted).

Similarly, Plaintiff is not attempting to introduce her credit reports to prove their truth.  Indeed, she alleges they are false and untrue, and is offering her credit reports to show the falsity of the matter asserted therein.  Statements made by Ocwen are not even hearsay at all as an admission by party opponent under F.R.E. 801(d)(2).  Even assuming, arguendo, that the credit reports are hearsay, there are exceptions that may apply, such as the business records exception under F.R.E. 803(6).  A credit report may also be considered a statement of Plaintiff's reputation and/or character under F.R.E. 803(21), which is consistent with the definition of "consumer report" in the FCRA:

> any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, **character**, **general reputation**, personal characteristics, or mode of living….

*15 U.S.C. 1681a(d)(1) (bolded for emphasis).*

As such, the Court should defer ruling on the admissibility of the Plaintiff's credit reports until it hears the evidentiary foundation.

**E.  Evidence Of Jeffers' Allegations Against Ocwen In Prior Matters.**

Ocwen seeks to bar Plaintiff from talking about anything that happened prior to September 2016 as automatically irrelevant because of the September 2016 settlement agreement.  Although Plaintiff agrees that the jury cannot award any damages for anything that happened prior to September 2016 (and will stipulate to a jury instruction to the same), that does not automatically mean that all events prior to that date are irrelevant.

The events that lead up to the settlement are relevant to the overall story of what happened in this case, and to give the jury some context.  Without a proper context, the jury may believe that one day Ocwen just randomly agreed to enter into a settlement agreement with Plaintiff for no particular reason.

In FCRA cases, courts have routinely allowed plaintiffs to introduce evidence of conduct which fell outside the 2 year statute of limitations in order to put the overall story into context for the jury.  *Byrd v. Trans Union LLC*, 2010 WL 2555119, at *2 (D.S.C. June 18, 2010), *citing Bryant v. TRW, Inc.*, 487 F.Supp. 1234 (E.D.Mich.1980) and *Lazar v. Trans Union, LLC*, 195 F.R.D. 665 (C.D.Cal.2000).

Moreover, the events that happened pre-September 2016 may be relevant to place the post-September 2016 events in context.  For example, the fact that Ocwen has had Plaintiff's loan screwed up for several years, and that it has taken **two** federal lawsuits and years of litigation to obtain compliance, may demonstrate to the jury why Plaintiff experienced the type of emotional distress that she did.  Furthermore, the pre-

September 2016 events may also shed light on the reasonableness of Ocwen's

"investigations" into Plaintiff's disputes, and whether Ocwen should have considered as

part of its post-September 2016 investigations that it had previously reported false

information about Plaintiff, and that it had previously been involved in a lawsuit with

Plaintiff that resulted in a substantial settlement on Plaintiff's behalf.

WHEREFORE, Plaintiff prays that Ocwen's Motion in Limine be Denied.

s/ Matthew R. Osborne
11178 Huron St., Ste 7
Northglenn, CO 80234
(303) 759-7018
matt@mrosbornelawpc.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on 1/17/2018, I served a true and correct copy of the foregoing via CM/ECF
to the following:

Cynthia Lowery-Graber, Bryan Cave, LLP, Attorneys for Defendant.

s/ Mike Nobel