# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00025-WYD-KHR

**VALERIE JEFFERS,**

    **Plaintiff,**

**v.**

**OCWEN LOAN SERVICING, LLC,**

    **Defendant.**

## DEFENDANT'S MOTION FOR DIRECTED VERDICT

Defendant Ocwen Loan Servicing, LLC ("Ocwen") respectfully submits the following Motion for Directed Verdict pursuant to Fed. R. Civ. P. 50(a). In support thereof, Ocwen states as follows:

## I. CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), the undersigned counsel for Ocwen certifies that they have conferred with counsel for Plaintiff Valerie Jeffers ("Plaintiff") regarding the present Motion for Directed Verdict. Plaintiff opposes the relief sought herein.

## II. INTRODUCTION

Plaintiff and Ocwen previously entered into a settlement agreement to resolve prior litigation involving the parties and Jeffers' home loan. The agreement required Ocwen to, among other things, make Plaintiff's home loan current through September 2016 and report to the three major credit bureaus that the loan was current and had been current from the time

Ocwen began servicing her mortgage loan through September 2016. The agreement also required Plaintiff to "do all acts" necessary to "secure the intended benefits" of the agreement and ensure that Ocwen had complied with its contractual obligations. Through a series of inadvertent and unintentional delays, Ocwen did not fully meet its obligations under the settlement agreement until July 2017, and Plaintiff made no effort to contact Ocwen – either directly or through her counsel – to raise the issue of Ocwen's implementation of the account and credit corrections.

Instead of contacting Ocwen, Plaintiff submitted her credit reporting dispute to three consumer reporting agencies, and now asserts a claim under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA"), relating to Ocwen's investigations of that dispute. Plaintiff contends that Ocwen willfully violated Section 1681s-2(b) "by failing to conduct a reasonable investigation into Plaintiff's post-settlement dispute," by "failing to review and consider its own business records," and "by setting up policies and procedures to ensure that its investigations into consumer disputes, including Plaintiff's dispute, were cursory, superficial, and largely automated." (Complaint, ECF No. 1, at ¶ 20; *see also* Final Pretrial Order, ECF No. 22, at 2-3).

Judgment as a matter of law is appropriate in Ocwen's favor on Plaintiff's FCRA claim because the record lacks any evidence to support the claim that Ocwen's investigation was unreasonable. To the extent the Court declines to enter a directed verdict on the issue of reasonableness, judgment as a matter of law is appropriate in Ocwen's favor, at a minimum, on the issue of willfulness.

There is no evidence that Ocwen intentionally violated the statute or otherwise acted with reckless disregard of its duties under the FCRA. Instead, the evidence shows that Ocwen has

procedures in place for its investigation of credit reporting disputes, and that Ocwen followed those procedures in this case. The simple fact that Ocwen's investigation failed to identify the settlement agreement as part of its investigation does not mean that the investigation was unreasonable or that Ocwen intentionally or recklessly violated the FCRA. Moreover, the dispute that Plaintiff made to the consumer reporting agencies failed to mention that her complaints arose from a settlement agreement or from litigation with Ocwen, information that would have aided Ocwen's investigation. The Court should therefore enter judgment as a matter of law in favor of Ocwen on Plaintiff's claim that Ocwen violated the FCRA by conducting unreasonable investigations, or, alternatively, judgment should be entered on Plaintiff's claim of a willful violation of the FCRA.

## III. LEGAL STANDARD

"The Supreme Court has recognized that the standard for a directed verdict under Rule 50 mirrors the standard for summary judgment." *See DeAtley v. Keybank Nat. Ass'n*, No. 12-cv-02973-PAB-BNB, 2014 WL 7435904, at *3 (D. Colo. Dec. 29, 2014) (Brimmer, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)). A party is entitled to judgment as a matter of law "if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244-45 (10th Cir. 2009) (internal quotations omitted); *see also Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001) (judgment as a matter of law is appropriate when the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."). "Thus, the court must review all of the evidence in the record, drawing all

reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence." *Perkins v. Fed. Fruit and Produce Co., Inc.*, No. 11-cv-542-JAP-KLM, 2013 WL 2112230, at *3 (D. Colo. May 14, 2013) (Parker, J.) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000)).

## IV. ARGUMENT

### A. Ocwen is entitled to judgment as a matter of law regarding the reasonableness of its dispute investigations.

Plaintiff has not met her burden of proving that Ocwen violated the FCRA. Plaintiff brings her claim under Section 1681s-2(b)(1), which sets forth the obligations of a furnisher, like Ocwen, under the FCRA. When a furnisher receives a consumer dispute from a consumer reporting agency ("CRA"), it must:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Pinson v. Equifax Credit Info. Serv., Inc.*, 316 Fed.Appx. 744, 750 (10th Cir. 2009). A furnisher's investigation after receiving notice of a consumer dispute must be "reasonable," and the plaintiff bears the burden of showing it was not. *See Collins v. BAC Home Loans Servicing, LP,* 912 F.Supp.2d 997, 1011 (D. Colo. December 12, 2012) *citing Cousineau v. Unifund CCR Partners,* No. 10–cv–03109–CMA–KLM, 2012 WL 3135687, at *3 (D. Colo. July 31, 2012).

A reasonable investigation "is one that a reasonably prudent person would undertake under the circumstances." *Maiteki v. Marten Transport Ltd*, 828 F.3d 1272, 1275 (10th Cir.

4

2016). Importantly, this Court found "the court looks to the procedures employed, rather than the results of the investigation." *Collins,* 912 F. Supp. 2d at 1011-12. "How thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA," and "[a] more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute." *Maiteki*, 828 F.3d at 1275.

It is reasonable for a furnisher to rely upon its own servicing records when investigating a dispute. *See, e.g., Id* ("An investigation does not have to be exhaustive to be reasonable . . . [and] a company may rely on its own records."); *Collins*, 912 F.Supp.2d at 1011–12 (same); *Taylor v. Georgia Power Company*, No. CV 215-06, 2016 WL 6836935, *3 (S.D. Ga. Nov. 18, 2016) (same). In addition, the FCRA does not require the furnisher to write or call the consumer directly during its investigation for it to be reasonable. *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (requiring the Defendant to contact the Plaintiff regarding her dispute "would be terribly inefficient and such action is not mandated by the FCRA.").

Here, Plaintiff has not presented any evidence that Ocwen's investigation was unreasonable. To the contrary, the evidence shows that Ocwen implemented procedures for investigating credit reporting disputes that called for the Ocwen employees conducting the investigations to cross reference Ocwen's servicing records with the information contained in the dispute. *See, e.g., Cousineau,* 2012 WL 3135687, at *3 ("To determine whether Defendant's investigations were reasonable, the focus is . . . on whether the procedures employed by Defendant were reasonable."). Moreover, the evidence shows that Ocwen followed those

procedures, and the investigations reached the correct result based on the information contained in Ocwen's servicing records, even if the information in those records was incorrect.

The fact that a separate department at Ocwen failed to implement the settlement agreement into the servicing records does not mean that the investigation was unreasonable, particularly when the Plaintiff's dispute made no reference whatsoever to the settlement agreement or the litigation. As such, Ocwen's investigation was based on the information provided to it by the CRAs, which made no mention of the prior settlement agreement or the litigation. Framing the investigation based on the information contained in the dispute is reasonable. *See Collins,* 912 F.Supp.2d at 1011 ("The wording of the notice of dispute, as the furnisher receives it from the CRA, constrains the investigation: the furnisher need only respond to the specific dispute, as it is received."); *see also Gormon v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) ("The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."). Here, Plaintiff's dispute stated only that Ocwen "is reporting me as past due, but all payments were made on time and the account was never past due." *See* Plaintiff's Exhibit 5. As in the *Collins* matter, Plaintiff did not provide any further detail nor did she provide any documentation to support her dispute. Consequently, it is not unreasonable that an employee whose job it is to investigate credit disputes would not be aware of a settlement agreement or the existence of litigation related to the same issue. Plaintiff tries to compensate for the lack of evidence that Ocwen's investigation was unreasonable by arguing that it must have been unreasonable because it reached an incorrect conclusion. However, it is well-settled that an investigation is "not necessarily unreasonable because it results in a

substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Maiteki v. Marten Transport Ltd*, 12-CV-2021-WJM-CBS, 2015 WL 5996760, at *9 (D. Colo. Oct. 15, 2015). This is because "an FCRA violation is tied to the reasonableness of an investigation rather than the accuracy of its results," so that the furnisher is not held "to an impossible standard that render[s] it liable anytime its investigation did not reach the correct result." *Drew v. Equifax*, 690 F.3d 1100, 1110 (9th Cir. 2012). Consequently, Plaintiff has failed to meet her burden of showing that Ocwen's investigation was unreasonable, and the Court should grant judgment in Ocwen's favor as a matter of law.

> **B. At a minimum, Ocwen is entitled to judgment as a matter of law regarding Plaintiff's claim that Ocwen willfully violated the FCRA.**

Even if the Court declines to enter directed verdict against Plaintiff because Ocwen's investigations were reasonable, Plaintiff has not met her evidentiary burden on the issue of willfulness. An FCRA violation is willful only if the defendant intentionally violated the FCRA or acted with reckless disregard of its duties under the FCRA. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2007) ("We have said before that 'willfully' . . . cover[s] not only knowing violations of a standard, but reckless ones as well."). Plaintiff has failed in both respects as she has not presented any evidence that Ocwen violated the FCRA intentionally or recklessly.

A violation of the FCRA is "intentional" only if the defendant acted with the specific intent not to comply with the FCRA's obligations. *See* 3A Fed. Jury Prac. & Instr. § 153:39 (6th ed.) ("[Intentionally] failing to comply with a requirement imposed under the [FCRA] . . . [requires] specific intent to fail to do something the law requires to be done, in other words, with a purpose either to disobey or disregard the law."); *see also* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "intentional" as an act "done with the aim of carrying out the act"). In other

words, the defendant must have acted with the purpose of disobeying or disregarding the FCRA. *Id*.

Conversely, a violation of the FCRA is committed with "reckless disregard" only if the defendant acted "purposefully" with knowledge that its conduct was "dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *See Stich v. BAC Home Loans Servicing, LLC,* No. 10-cv-1106-CMA-MEH, 2012 WL 619241, *7 (D. Colo. 2012) (Arguello, J.). This requires that the defendant's actions involved such "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 127 S. Ct. at 2215 ("While the term recklessness is not self-defining, the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard) (internal quotations omitted); *see also Syed v. M-I,* LLC, 853 F.3d 492, 504 (9th Cir. 2017) (a defendant "acts recklessly when he creates an unreasonable risk of physical harm to another that is substantially greater than that which is necessary to make his conduct negligent.") (internal quotes omitted); Restatement (Second) of Torts § 500 (1965) ("The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.").

The *Stich* case is instructive. In *Stich*, the plaintiff borrower asserted a claim for willful violation of Section 1681s-2(b) against the defendant home loan servicer. *See* 2012 WL 619241, *2. Similar to the present case, the plaintiff in *Stich* alleged that the defendant inaccurately

8

reported that the plaintiff had failed to make a monthly payment, and that the defendant willfully violated the FCRA by failing to reasonably investigate the plaintiff's dispute. *Id.* at *1. The district court entered judgment in favor of the defendant on the issue of willfulness. *Id.* at *7. It found that "the closest" that the plaintiff came to establishing willfulness was pointing to prior credit reporting inaccuracies on the plaintiff's loan. *Id.* at *8. However, the district court found that these inaccuracies "shed[] little light" on willfulness and did nothing more than indicate that the defendant should have "exercised greater caution" in its credit reporting and dispute investigation. *Id.* The district court then concluded that the defendant's failure to exercise caution does not amount to willfulness, and granted judgment in favor of the defendant as to the claim of a willful FCRA violation. *Id.*

The same result is warranted here. Plaintiff has presented no evidence demonstrating that Ocwen acted intentionally or with reckless disregard of its FCRA obligations when it investigated Plaintiff's dispute. Notably absent from Plaintiff's case-in-chief is any evidence that Ocwen directed its employees to intentionally conduct unreasonable investigations of Plaintiff's dispute. Nor is there any evidence that Ocwen conducted its investigations dangerously, heedlessly, or recklessly without regard to the possible consequences or to Plaintiff. Nor did Plaintiff present any evidence that Ocwen made a conscious decision to disregard the terms of the parties' settlement agreement and purposefully disobey the agreement.

Instead, the evidence establishes precisely the opposite. Ocwen implemented procedures for investigating credit reporting disputes, and it followed those procedures. Plaintiff's dispute notably did not reference the settlement agreement or the prior litigation. Instead, Plaintiff stated only that Ocwen "is reporting me as past due, but all payments were made on time and the

account was never past due." *See* Plaintiff's Exhibit 5. Thus, Ocwen employees were not alerted to the fact that the credit reporting should have been corrected pursuant to the terms of the agreement or that the litigation was even related to the credit reporting. The Ocwen employees reviewed Plaintiff's dispute and cross-referenced the dispute with the information contained for Plaintiff's loan in Ocwen's loan servicing system, which revealed that the credit reporting was correct based on Plaintiff's payment history.

Like in *Stich*, Plaintiff attempts to characterize this reasonable conduct as willful by pointing to the existence of a settlement agreement and the fact that the investigation was conducted by an employee without any prior knowledge of Plaintiff's loan. However, it is unreasonable to expect that an employee whose job is to investigate credit disputes would have known about the settlement agreement or the details of the litigation between the parties, when the litigation and agreement were handled by the law department and particularly when Plaintiff herself neglected to mention either in her dispute. There is simply no evidence in the record to support Plaintiff's contention that Ocwen conducted its investigations without regard to its obligations under the FCRA. Consequently, the Court should grant judgment as a matter of law in favor of Ocwen because the record evidence lacks any legally sufficient basis for a claim for willful violation of the FCRA.

## V. CONCLUSION

For the foregoing reasons, Ocwen hereby respectfully requests that this Court grant this Motion for Directed Verdict and enter judgment in favor of Ocwen as set forth herein.

Respectfully submitted this 21st day of February, 2018.

*s/ Paul J. Lopach*
Paul J. Lopach
Robert J. Hoffman
Cynthia Lowery-Graber
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone: (303) 861-7000
Email: paul.lopach@bryancave.com
rjhoffman@bryancave.com
cynthia.lowery-graber@bryancave.com

***Attorney for Defendant, Ocwen Loan Servicing, LLC***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 21st day of February, 2018, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR DIRECTED VERDICT** was served via the Court's CM/ECF system, which will automatically send notice of the same to:

Matthew R. Osborne
11178 Huron St., Suite 7
Northglenn, CO 80234
(303) 759-7018
matt@mrosbornelawpc.com
*Attorney for Plaintiff*

*s/ Paul J. Lopach*
Bryan Cave LLP